UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                        Criminal Case No. 17-20032

Dupree Rich,                        Sean F. Cox
                                               United States District Court Judge

    Defendant.
_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant Dupree Rich is charged with drug and firearm offenses, that stemmed from the execution of a search warrant at his home in Clinton Township, Michigan. The matter is currently before the Court on Rich's Motion to Suppress Evidence Obtained As A Result of Search Warrant. The parties have briefed the issues and the Court held an evidentiary hearing, and heard oral argument, on August 24, 2017. Thereafter, the parties filed supplemental briefs. For the reasons set forth below, the Court shall DENY Defendant's Motion to Suppress.

## BACKGROUND

The two-count Indictment in this criminal action charges Defendant Rich with: 1) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count One); and 2) being a felon in possession of firearm, in violation of 18 U.S.C. § 922(g) (Count Two).

On May 15, 2017, Rich filed a "Motion to Suppress Evidence Obtained As A Result Of Search Warrant" (D.E. No. 18), which raises the following arguments: 1) the affidavit for search

1

warrant is void of probable cause to search Rich's home, based on the four corners of the search warrant affidavit and based upon alleged material omissions by the officer who submitted the search warrant affidavit; 2) the police cannot rely on the warrant in good faith; and 3) obtaining the warrant from a state district judge violated Fed. R. Crim. P. 41 and requires suppression. (*Id*. at Pg ID 48).

The Government contends that probable cause existed within the four corners of the search warrant affidavit and that the officer did not omit any material information. The Government also contends that the evidence should not be suppressed in any event under the *Leon* good-faith exception and that suppression is not warranted under Fed. R. Crim. P. 41.

With the issues so framed by the parties, this Court set Rich's Motion to Suppress for hearing.

The Government argued, in its response and at oral argument, that Rich is not entitled to a *Franks* hearing because he has not made the "substantial preliminary showing of deliberate falsehood or of reckless disregard for the truth" required under *Franks v. Delaware*, 438 U.S. 154 (1978).

The preliminary showing here consisted of the arguments contained in Rich's Motion to Suppress, and his assertions about facts known by the officers but omitted from the search warrant affidavit. Out of an abundance of caution, however, and because Rich's motion raised additional challenges, such as his challenge under Fed. R. Crim. P. 41(b), this Court permitted Defendant to proceed with an evidentiary hearing on August 24, 2017.

The Government called one witness at the evidentiary hearing, Sergeant Jason Kment. Defense Counsel cross-examined Sergeant Kment and did not call any other witnesses. There

was just one exhibit submitted into evidence at the evidentiary hearing – the search warrant affidavit. (D.E. No. 18-1).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Sergeant Jason Kment has been employed by the Southgate Police Department in Southgate, Michigan since June of 2003.

In February of 2016, Kment was working as a Southgate police officer on detail to the federal Drug Enforcement Administration. He began that role as a task force officer in March of 2010. While working as a task force officer, the drug cases he investigates can go either state or federal.

In February of 2016, a confidential informant, who had reliably provided true information in the past (the "CI"), provided information relating to cocaine trafficking by a man named John Yalda. Several other officers, in addition to Kment, were involved in that investigation.
Other agents on the task force met with that CI for the purpose of making a controlled buy of cocaine from Yalda.

On February 22, 2016, the CI arranged to make a purchase of cocaine from Yalda. Shortly before the transaction, officers observed Yalda leave the area of the Floyd Street

Residence in Clinton Township, Michigan and drive to a Party King food store in Clinton Township, Michigan. Once he arrived there, Yalda met with the CI in the parking lot and exchanged $2,600.00 for two ounces of cocaine, inside the CI's vehicle.

After that purchase, Yalda went into the store for a few minutes and then left the area, driving directly to the Floyd Street Residence. Yalda remained inside the Floyd Street Residence for less than ten minutes and then left the area.

Later that night, Yalda drove to a home on Clancy Street. While Yalda was there, he had a monitored call with the CI wherein the CI was attempting to purchase more cocaine. Yalda told the CI it was tough to find right now, but that he may be able to find another half ounce or so. Yalda said he would work on it and try to find some cocaine for the CI. But Yalda did not leave the home on Clancy Street for the remainder of that night, and no additional cocaine was sold to the CI the night of February 22, 2016.

On February 29, 2016, the CI purchased additional cocaine from Yalda, during a second controlled buy. Yalda and the CI met in a parking lot near the Party King food store, and agreed that the CI could purchase one ounce of cocaine for the price of $1,300.00. The CI then left the location, and so did Yalda. Yalda drove to the Floyd Street Residence. Approximately one minute later, the officers identified Rich as the driver of a black Cadillac Escalade that arrived at the Floyd Street Residence. Yalda and Rich were observed going inside the Floyd Street Residence together. Yalda exited the house a few minutes later. Rich then exited the home as well, and both men left the area in separate vehicles. Yalda was followed and he returned to the area of the Party King store parking lot. Yalda went into a Metro PCS store in the same commercial complex. The CI then arrived in the parking lot and called Yalda. Yalda and the CI

were in the Metro PCS store for together briefly, and then both men went to the CI's vehicle. While in the CI's vehicle, Yalda sold the CI one ounce of cocaine for $1,300.00. After the purchase, Yalda went back into the Metro PCS store for less than an hour, and also went into the Party King Store.

After those two controlled buys from Yalda, Kment learned that Rich has an extensive criminal history, including felony drug convictions for delivery of cocaine. Another officer on the task force obtained records from DTE Energy that showed that the electricity account for the Floyd Street Residence is in Rich's name.

Kment then prepared an affidavit for a search warrant. On February 29, 2016, Kment prepared an affidavit under oath in support of a search warrant for evidence related to controlled substances at the Floyd Street Residence in Clinton Township, Michigan. That affidavit was submitted to the Honorable James Kandrevas, a state district court judge in Southgate, Michigan, who issued the requested warrant. In relevant part, Kment's search warrant affidavit stated:

> 1. Affiant is a Police Officer with the Southgate Police Department and has been employed for over 12 years. Affiant has been a law enforcement officer for over sixteen years and is currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) for the past five years and eleven months. Affiant's primary duties include the initiation and investigation of narcotic related complaints. Through experience and training, Affiant is familiar with the unlawful use, production, and distribution of dangerous drugs.
>
> . . . .
>                    INVESTIGATIVE BACKGROUND
>
> 1. This affidavit contains information from one confidential source (hereinafter referred to as DEA1). The DEA1 has provided information in prior investigations that have been verified through other sources to be reliable, true and accurate.
>
> 2. To date, DEA1 had provided information in prior investigations that has

been verified through other sources to be reliable, true, and accurate. DEA1 has provided information that has led to the arrest of drug traffickers and the seizure of controlled substances and United States Currency.

3. In October, 2015, agents/officer received information from DEA1 regarding the narcotics trafficking of John YALDA in the Clinton Township, Michigan area.

4. On February 22, 2016, agents/officers coordinated the purchase of two ounces of cocaine from YALDA. Prior to the transactions, YALDA was observed by surveillance coming to Floyd Street in the area of [the Floyd Street Residence]. Following the transaction, surveillance followed YALDA to [the Floyd Street Residence] where he was observed entering the residence for approximately 7 to ten minutes. YALDA then exited the residence and left the area.

5. On February 28, 2016, DEA1 provided agents/officers with information that John YALDA contacted DEA1 by telephone and stated that YALDA would be in possession and prepared to distribute ounce quantities of cocaine on February 29, 2016.

6. On February 29, 2016, at approximately 4:00 p.m., agents/officers established surveillance on YALDA. YALDA was observed by agents to be driving a grey, 2015, Dodge Ram pickup truck bearing Michigan registration DFY 2897.

7. On February 29, 2016, agents/officers directed DEA1 to contact YALDA by telephone and schedule a meeting. During the meet in Clinton Township, Michigan, YALDA agreed to provide DEA1 with a sample of cocaine. It was agreed between YALDA and DEA1 that YALDA would provide one ounce of cocaine in exchange for $1,300.00. Agents/officers followed YALDA from the meeting. Following one stop, YALDA went to [the Floyd Street Residence], Clinton Township at 5:05 P.M. YALDA went inside the location and exited the residence at 5:12 P.M. Surveillance followed YALDA from [the Floyd Street Residence,] Clinton Township to the predetermined meeting location with DEA1.

8. YALDA arrived driving the meeting location in Clinton Township, Michigan at approximately 5:17 P.M. YALDA walked to DEA1 where YALDA provided DEA1 with a sample of cocaine which was approximately one ounce. DEA1 paid YALDA $1,300.00 for the cocaine sample. DEA1 left the location followed by agents/officers. DEA1 turned over the sample of cocaine to agents/officers. The sample was field tested

6

and subsequently tested positive.

9. In late February, 2016, agents received utility records from DTE Energy for [the Floyd Street Residence] pursuant to an administrative subpoena. DTE Energy records list the account holder for [the Floyd Street Residence] as Dupree L. Rich. A query of law enforcement databases revealed that RICH has an extensive criminal history including multiple convictions for felony drug offense including delivery of cocaine. RICH also has prior convictions for resisting arrest and assaulting a police officer.

10. Based on your affiant's training and experience, and that of other agents/officers, Affiant believes a search of [the Floyd Street Residence] Clinton Township, Michigan will reveal illegal drugs and/or proceeds of illegal drugs.

11. Based on the foregoing, it is affiant's contention that there is probable cause to believe the residential property located at [the Floyd Street Residence] contains evidence of a conspiracy to distribute cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and 846, involving YALDA and other co-conspirators. More particularly, Affiant contends there is probable cause to believe that the [Floyd Street Residence] contains one or more of the following: wrappers and packaging materials used to prepare drugs for different levels of distribution, illegal drugs, large amounts of currency, financial instruments, firearms, scales, and drug related paraphernalia.

(Search Warrant Affidavit).

The Search Warrant Affidavit did not mention that drug exchanges between Yalda and DEA1 had occurred near the Party King store. It also did not mention that on one night during which no controlled purchase ended up occurring, Yalda was recorded telling DEA1 that he was going to get more cocaine, after which he went to a home on Clancy Street.

Kment did not include that information because he did not believe that it was relevant to the investigation. Kment did not include information about the CI and Yalda going into the Metro PCS store in the search warrant for the same reason, because he did not believe it was relevant to the investigation.

Kment obtained the requested warrant from a Southgate district court judge at approximately 6:00 p.m., on February 29, 2016.

During the two-hour window between the time that Kment obtained the warrant (6:00 p.m.) and the time that he executed it (shortly before 8:00 p.m.), other officers on the task force continued with the investigation.

At approximately 7:30 p.m., a vehicle was stopped by other officers, after it had left Floyd Street. A man named Mr. Lee had been stopped and searched but no drugs had been found.

At some point after the search warrant had been obtained, but before it had been executed, Yalda told the confidential informant that he had three ounces of cocaine to sell. Yalda's vehicle was then stopped, and searched after leaving the Floyd Street Residence and no cocaine was found in it.

In addition, at some point after the search warrant had been obtained, but before it had been executed, Yalda was recorded telling the confidential informant that he had three ounces of cocaine at his house if the confidential informant wanted it.

Kment executed the search warrant shortly before 8:00 p.m. on February 29, 2016, and cocaine and other evidence was seized from the Floyd Street Residence.

## ANALYSIS & CONCLUSIONS OF LAW

In his motion, Rich challenges the validity of the search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) and *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004). The motion raises several issues, all in relation to the search warrant that was executed at Rich's home.

I.      **Probable Cause Existed Based Upon The Four Corners Of The Search Warrant Affidavit.**

The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the "four corners" of the search warrant affidavit. *Brown*, 828 F.3d at 381.

"The Fourth Amendment provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' U.S. Const. amend. IV." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). "The 'chief evil' deterred by the Fourth Amendment is the physical invasion of the home." *Id.* (citation omitted). The Sixth Circuit has explained:

> "One of the touchstones of the reasonableness requirement is that the police must generally obtain a warrant based upon a judicial determination of probable cause before entering the home." *Ziegler v. Aukerman*, 512 F.3d 777, 785 (6th Cir. 2008). The job of the magistrate judge presented with a search warrant application is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*Brown*, 828 F.3d at 381.

"'There must, in other words, be a *nexus* between the place to be searched and the evidence sought.'" *Brown*, 828 F.3d at 381 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)) (emphasis added by *Brown*). In *Brown*, the Sixth Circuit discussed that nexus requirement:

> In *Carpenter,* we held that because the Fourth Amendment requires a search warrant to describe particularly the place to be searched and the persons or

9

> things to be seized, the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched. 360 F.3d at 594. The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." *Id*. at 595. If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a judge may not find probable cause to issue a search warrant. *Id*. And of course, whether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of circumstances presented. *See Gates,* 462 U.S. at 238, 103 S.Ct. 2317; *Brown,* 732 F.3d at 573.

*Brown*, 828 F.3d at 382.

This Court concludes that probable cause existed for the search of the Floyd Street Residence because the search warrant affidavit established a nexus between the place to be searched (the Floyd Street Residence) and the evidence sought (evidence of controlled substances).

Sergeant Kment's affidavit explained that a reliable confidential informant advised the officers that a man named Yalda was engaging in narcotics trafficking in Clinton Township, Michigan. With the assistance of the confidential informant, the investigating officers then set up two controlled purchases of cocaine from Yalda.

Just prior to the first transaction on February 22, 2016, Yalda was observed coming from the Floyd Street Residence and driving to the meeting location. After having sold cocaine to the confidential informant at that location, Yalda was then observed driving back to the Floyd Street Residence, going inside for just seven to ten minutes, and then leaving the area.

The officers then learned that Yalda would be in possession of more cocaine and would be prepared to distribute another ounce on February 29, 2016. On that date, the confidential informant met with Yalda and agreed to provide one ounce of cocaine for $1,300. The officers then followed Yalda from that meeting and observed him go the Floyd Street Residence. Yalda

went inside the residence for approximately seven minutes, and then drove immediately to the pre-determined meeting location for the cocaine purchase. Yalda then sold the confidential informant one ounce of cocaine for $1,300.

The affidavit also explained that the officers had learned that a utility account for the Floyd Street Residence was in the name of Rich, an individual with an extensive criminal history, with multiple felony drug offenses, including delivery of cocaine – the same narcotic that was sold by Yalda to the confidential informant on two occasions.

Yalda's incriminating actions – going to and from the Floyd Street Residence just before and after drug deliveries and staying a very short period of time – are inextricably connected to the Floyd Street Residence for which the search warrant was sought. *See United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). From Yalda's actions, coupled with the knowledge that the utilities for that residence were in the name of a person with prior convictions for delivery of cocaine, the issuing judge could infer that there was a fair probability that cocaine was being stored in the Floyd Street Residence, such that a search of that location would be likely to yield contraband or other evidence of a crime.

The state judge had a substantial basis for issuing the search warrant.

**II.     Is Suppression Warrant Based Upon Material Omissions?**

Rich requested a *Franks* hearing, in order to further his argument that Sergeant Kment deliberately or recklessly misled the magistrate judge who issued the search warrant by omitting critical information from the supporting search warrant affidavit.

"This type of hearing emerged from the Supreme Court's recognition" in *Franks, supra*, "of a defendant's right to challenge the sufficiency of an executed search warrant by attacking

11

the veracity of the affidavit supporting the warrant." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). "To facilitate such a challenge, *Franks* granted defendants a limited right to an evidentiary hearing concerning the veracity of the affidavit." *Id*. Such challenges can be based on alleged material misrepresentations in the affidavit, material omissions from the affidavit, or both.

Here, Rich does not allege that there are any misrepresentations in the affidavit. Rather, he contends that crucial information was *omitted* from the affidavit.

"Although material omissions are not immune from inquiry under *Franks*," the Sixth Circuit has "recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). "This is so because an allegation of omission 'potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to the defendant's benefit.'" *Id*. (citation omitted).

In the case of such alleged material omissions, the defendant is entitled to an evidentiary hearing only if he first makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit. *Atkin,* 107 F.3d at 1217.

The preliminary showing here consisted of the arguments contained in Rich's Motion to Suppress, and his assertions about facts known by the officers but omitted from the search warrant affidavit. Out of an abundance of caution, however, and because his motion included other challenges, this Court permitted Defendant to proceed with an evidentiary hearing on

August 24, 2017.

In order to prevail on his *Franks* challenge to the search warrant based on omissions, Rich must show: 1) that the affiant engaged in a reckless disregard for the truth in omitting information from the affidavit; and 2) that a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it. *Fowler,* 535 F.3d at 415. This Court concludes that Defendant has not made either showing.

Recklessness in omitting information from a search warrant affidavit may be inferred if the material omitted would be critical to a finding of probable cause. *United States v. Gonzalez*, 781 F.3d 422, 431 (8th Cir. 2015); *see also Peet v. City of Detroit*, 502 F.3d 557, 571 n.3 (6th Cir. 2007) ("Omissions are made with reckless disregard if an officer withholds 'a fact in his ken' that 'any reasonable person would have known . . . is the kind of thing the judge would wish to know.'").

Here, Rich identifies the following as the omissions that form the basis of his challenge: 1) that transactions involving the CS and Yalda occurred at or near the Party King store, where Yalda worked; 2) that while Yalda was at a home on Clancy Street he was recorded telling the CS that he was trying to get more cocaine.

Rich argues that those facts are material in that they could possibly indicate that "Yalda kept his drug supply at his own home, not at the Floyd Street Residence," or that "he was dealing at his place of employment, not at the Floyd Street Residence." (Def.'s Motion at 13).

Those assertions strike this Court as the kind of "endless conjecture" about "information or other matter that might, if included, may be redounded to the defendant's benefit" that the Sixth Circuit identified as the reason for imposing a higher standard as to alleged omissions.

That Yalda made the actual drug transactions in a parking lot near Yalda's employer does not detract from his behavior in traveling to and from the Floyd Street Residence shortly before or after the transactions, and staying just a few minutes. Sergeant Kment did not include details concerning Yalda's employer, or that Yalda and the confidential informant went into a Metro PCS store while discussing a transaction, because he did not deem those facts as relevant to the investigation.

Similarly, Kment did not include in his affidavit any comments that Yalda had made while he was at a home on Clancy Street, because no drug transactions were made on that date.

The Court concludes that Rich has failed to make a preliminary showing that Sergeant Kment engaged in a reckless disregard for the truth in omitting information from the search warrant affidavit.[1]

Moreover, even if the information at issue had been included in the search warrant affidavit, this Court concludes that probable cause to search the Floyd Street Residence would still exist.

### III. The Officer Having Obtained The Search Warrant From A State District Judge Does Not Require Suppression Under Rule 41.

Finally, Rich argues that Sergeant Kment having obtained the search warrant from a state district judge "violated Federal rule of Criminal Procedure 41 and requires suppression." (Rich's Br. at 16).

---

[1]The Court notes that Rich's brief and oral argument also focused on events that occurred *after the search warrant had been issued*, but before it had been executed. Obviously, Sergeant Kment could not have included facts pertaining to those events in the search warrant affidavit because they had not yet occurred. And Rich has provided no legal authority to support his suggestion that events that occur after a search warrant has been obtained, but prior to its execution, could somehow invalidate the search warrant.

14

Rule 41 of the Federal Rules of Criminal Procedure governs "Search and Seizure," and provides, in pertinent part:

> (b) Venue for Warrant Application. At the request of federal law enforcement officer or an attorney for the government:
>
>> (1) a magistrate judge with authority in the district – *or if none is reasonably available, a judge of a state court of record in the district* – has authority to issue a warrant to search for and seize a person or property located within the district;

Fed. R. Crim. P. 41(b)(1) (emphasis added).

Rich asserts that the search warrant Sergeant Kment obtained in this case is invalid because Kment applied to a state judge for it, without any showing that a federal magistrate judge was not "reasonably available." (Rich.'s Supp. Br. at 5).

This Court rejects that argument for the same reason it was rejected in *United States v. Duval:*

> The Duvals' argument on this issue lacks merit. Deputy Glick was at the time on detail with the DEA, meaning that he was essentially a sheriff's deputy working on issues of "mutual concern" with a federal agency. *See* 5 U.S.C. § 3372(a)(2) ("[T]he head of a Federal agency may arrange for the assignment of ... *an employee of a State or local government* to [the federal agency] ... for work of mutual concern to [the federal agency] and the State or local government....") (emphasis added). As Deputy Glick testified at the suppression hearing, the effect of his position as a Task Force Agent is that he "can go State or Federal with an investigation." Deputy Glick exercised this flexibility to apply for and obtain a state search warrant based on Gerald's presumptive violation of state law, which precludes application of Rule 41 in this case. *See United States v. Bennett,* 170 F.3d 632, 635 (6th Cir. 1999) ("[T]he validity of a search warrant obtained by state officers for seizure of evidence ultimately used in a federal prosecution turns only on constitutional issues," not on Rule 41.)

*United States v. Duval*, 742 F.3d 246, 254 (6th Cir. 2014).

Like the officer in *Duval*, at the relevant times in this case Sergeant Kment was working on a joint task force with the DEA, meaning that he was a state officer working on issues of

15

mutual concern with a federal agency. As Sergeant Kment testified, that means that the investigation at issue could have gone "state or federal" and Kment exercised that flexibility to apply for and obtain a state search warrant based on a presumptive violation of state law, which precludes application of Fed. R. Crim. P. 41 in this case.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant Rich's Motion to Suppress is DENIED.

IT IS SO ORDERED.

                                            s/Sean F. Cox
                                            Sean F. Cox
                                            United States District Judge

Dated: October 20, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 20, 2017, by electronic and/or ordinary mail.

                                            s/Jennifer McCoy
                                            Case Manager